IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO


DIANA FORSYTH,

    Plaintiff,

    v.                                          CIVIL NO. 03-1872 (RLA)

DAEWOO MOTORS DE PUERTO RICO,
INC., et al.,

    Defendants.


## ORDER IN THE MATTER OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants DAEWOO MOTORS DE PUERTO RICO ("DAEWOO") and its insurer, LEXINGTON INSURANCE CO., have moved the court to enter summary judgment on its behalf arguing that plaintiff's termination from employment with DAEWOO was not based on her sex. The court having reviewed plaintiff's opposition thereto as well as the evidence submitted by the parties hereby rules as follows.

Plaintiff instituted these proceedings alleging discrimination on the basis of her gender and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e as amended; Puerto Rico Law 100 of June 30, 1959 as amended, 29 Laws of P.R. Ann. § 146 (2002) and Puerto Rico Law No. 69 of July 6, 1985, 29 Laws of P.R. Ann. § 1321-1341 (2002).

### SUMMARY JUDGMENT

Rule 56(c) Fed. R. Civ. P., which sets forth the standard for ruling on summary judgment motions, in pertinent part provides that

they shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Sands v. Ridefilm Corp., 212 F.3d 657, 660-61 (1st Cir. 2000); Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if it might affect the outcome of a lawsuit under the governing law. Morrissey v. Boston Five Cents Sav. Bank, 54 F. 3d 27, 31 (1st Cir. 1995).

"In ruling on a motion for summary judgment, the court must view 'the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.'" Poulis-Minott v. Smith, 388 F.3d 354, 361 (1st Cir. 2004) (citing Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir.1995)).

Credibility issues fall outside the scope of summary judgment. "'Credibility determinations, the weighing of the evidence, and the

CIVIL NO. 03-1872 (RLA)                                    **Page 3**

drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). *See also*, Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000) ("court should not engage in credibility assessments."); Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 49 (1st Cir. 1999) ("credibility determinations are for the factfinder at trial, not for the court at summary judgment."); Perez-Trujillo v. Volvo Car Corp., 137 F.3d 50, 54 (1st Cir. 1998) (credibility issues not proper on summary judgment); Molina Quintero v. Caribe G.E. Power Breakers, Inc., 234 F.Supp.2d 108, 113 (D.P.R. 2002). "There is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, and no room for the judge to superimpose his own ideas of probability and likelihood. In fact, only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment.". Cruz-Baez v. Negron-Irizarry, 360 F.Supp.2d 326, 332 (D.P.R. 2005) (internal citations, brackets and quotation marks omitted).

In cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a motion for summary judgment, Anderson v. Liberty Lobby, Inc., 477

U.S. at 256-257, 106 S.Ct. 2505, 91 L.Ed.2d 202; Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2000); Grant's Dairy v. Comm'r of Maine Dep't of Agric., 232 F.3d 8, 14 (1st Cir. 2000), and cannot rely upon "conclusory allegations, improbable inferences, and unsupported speculation". Lopez-Carrasquillo v. Rubianes, 230 F.3d 409, 412 (1st Cir. 2000); Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994); Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

## THE FACTS

DAEWOO is a corporation duly organized and doing business pursuant to the laws of the Commonwealth of Puerto Rico.

Plaintiff is of legal age, single and resident of San Juan, Puerto Rico.

During the relevant period of time LEXINGTON INSURANCE CO. had in full force and effect an employment practices liability insurance policy to respond in favor of DAEWOO.

In 1999 MR. KANG occupied the position of DAEWOO's Vice-President of Finance.

MR. KANG interviewed plaintiff on two occasions and she was offered employment as the Company's Human Resources Manager.

Plaintiff commenced working for the defendant in April 1999 as Human Resources Manager.

Plaintiff was the first woman to occupy a managerial position with the Company.

CIVIL NO. 03-1872 (RLA)                                        Page 5

Plaintiff's annual salary when first employed as Human Resources Manager was $34,000.00 plus benefits and bonuses.

In 1999 defendant had approximately 40 employees.

MR. KANG was plaintiff's sole supervisor during her tenure with the Company.

In December 2000 the Company underwent a reorganization whereby 20% of its employees were laid off, including the office administrator.

In December 2000 plaintiff was assigned the responsibilities of office administrator along with her former duties as Human Resources Manager. As a result thereof plaintiff received a salary increase.

In May 2001 MR. KANG was appointed President of the Company.

Plaintiff received copy of her job description as Human Resources and Administration Manager.

One of plaintiff's main responsibilities as Human Resources and Administration Manager was to help maintain a healthy work environment.

Plaintiff's responsibilities also entailed staying up to date in all employment law amendments. Administration and financial experience were also required.

As Human Resources and Administration Manager plaintiff was required to have excellent interpersonal skills, be able to work under pressure and possess excellent communication skills, among others.

CIVIL NO. 03-1872 (RLA)                                          **Page 6**

The process for renewing the Company's commercial insurance policies commenced in October 2001.

The Company had an insurance broker named DIEGO VIDAL.

On December 19, 2001 plaintiff wrote MR.KANG a memorandum notifying him that she had recommended several employees to take advantage of the Company's Employee Assistance Program due to the prevailing stress in the Company.

Since 2001 the work environment at the Company had become stressful due in part to rumors that GENERAL MOTORS had acquired DAEWOO.

In March 2002 MR. KANG took the office female employees, including plaintiff, out to lunch to celebrate Women's Week.

Subsequently, in March 2002 plaintiff conducted an employee survey to ascertain the reasons for the prevailing low morale among the employees.

The survey was conducted by plaintiff whereby she met with the employees by departments in the presence of their corresponding supervisors.

Neither MR. KANG nor MR. KIM participated in the process.

Except for accounting, all Company departments participated in the survey.

Approximately, 20 employees participated in the survey prepared by plaintiff. Of these, 18 were men and two were women.

On March 15, 2001 plaintiff provided MR. KANG with the results of the survey conducted.

On April 4, 2001 MR. KANG sent plaintiff a memorandum reprimanding her for having conducted the survey.

NICKY VIDAL, a male, was the Company's Vice-President of Operations at all relevant times.

MR. NICKY VIDAL complained to plaintiff on more than one occasion that MR. KANG harassed him.

Both NICKY VIDAL and plaintiff reported to MR. KANG who was their supervisor.

MR. KANG had a strong personality and yelled at the male employees of the Company as well plaintiff.

During her employment plaintiff's performance was evaluated on various occasions, the last one in 2001.

Plaintiff wrote a memorandum to her personnel file objecting to the results of her 2001 performance evaluation.

On September 30, 2002 MR. KANG discharged plaintiff from her employment.

At the time of her discharge plaintiff's annual salary was $42,700.00 plus bonuses and benefits.

### MCDONNELL DOUGLAS STANDARD

Art. 703 of Title VII of the 1964 Civil Rights Act, as amended, makes it unlawful for an employer "to fail or refuse to hire... or otherwise to discriminate against any individual with respect to his

CIVIL NO. 03-1872 (RLA)                                              **Page 8**

compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin". 42 U.S.C. § 2000e-2(a)(1).

Plaintiffs may opt to follow the burden-shifting framework established in McDonnell Douglas v. Green, 411 U.S. 792, 802-5, 93 S.Ct. 1817, 1824-26, 36 L.Ed.2d 668, 677-79 (1973) in proving discrimination. Defendants argued their motion based exclusively on the *McDonnell Douglas* burden shifting paradigm. Even though plaintiff alluded to the mixed-motive legal analysis in her opposition she addressed the evidence solely under *McDonnell Douglas* criteria. Hence, we shall proceed likewise.[1]

Under the *McDonnell Douglas* paradigm plaintiff carries the initial burden of establishing gender based discrimination by presenting evidence sufficient to constitute a prima facie case of discrimination. "In a wrongful termination case, the plaintiff must show that (1) she was within a protected class, (2) possessed the necessary qualifications and adequately performed her job, (3) but

---

[1] Until recently, in discrimination cases based on federal law plaintiffs could prove their claims through the mixed-motive analysis established in Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) provided they had direct evidence of discrimination. If only circumstantial evidence was available, plaintiffs would utilize the burden-shifting framework established in McDonnell Douglas. In Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003) the Supreme Court rejected the direct evidence requirement for application of the mixed-motive analysis. Thus, its use will be allowed even when only circumstantial evidence is available to a plaintiff. *See also,* Burton v. Town of Littleton, 426 F.3d 9 (1st Cir. 2005).

CIVIL NO. 03-1872 (RLA)                                          **Page 9**

was nevertheless dismissed and (4) her employer sought someone of roughly equivalent qualifications to perform substantially the same work." Rodriguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 58 (1st Cir. 2005). *See also*, Rivera Rodriguez v. Frito Lay Snacks Caribbean, 265 F.3d 15, 25 (1st Cir. 2001); Feliciano v. El Conquistador, 218 F.3d 1, 5 (1st Cir. 2000).

This *prima facie* showing is not onerous and once the plaintiff meets this burden, a presumption of discrimination arises and the employer must proffer a legitimate, nondiscriminatory reason for its actions. Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 254; 101 S.Ct. 1089; 67 L.Ed.2d 207 (1981). The burden at this second stage is one of production; it "can involve no credibility assessment." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509; 113 S.Ct. 2742; 125 L.Ed.2d 407 (1993). The burden of persuasion remains with the plaintiff at all times. Reeves, 530 U.S. at 142; St. Mary's Honor Center, 509 U.S. at 518; Hidalgo v. Overseas Condado Ins. Agencies, 120 F.3d 328, 334 (1st Cir. 1997). Furthermore, "[a] defendant need not persuade the court that it was actually motivated by the proffered reason. The explanation provided must be legally sufficient to justify a judgment in its favor." Freeman v. Package Mach. Co., 865 F.2d 1331, 1335 (1st Cir. 1988).

If the employer produces a legitimate, nondiscriminatory reason for its actions, the presumption of discrimination vanishes or "drops out of the picture", Reeves, 530 U.S. at 143; St. Mary's Honor, 509

CIVIL NO. 03-1872 (RLA)                                          **Page 10**

U.S. at 511, and the burden shifts back to the plaintiff to show that the employer's reasons are a mere pretext for discrimination. Gu v. Boston Police Dept., 312 F.3d 6, 11 (1st Cir. 2002); Gonzalez v. El Dia, Inc., 304 F.3d 63, 69 (1st Cir. 2002); Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 44-45 (1st Cir. 2002); Feliciano v. El Conquistador, 218 F.3d at 5; Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d. 46, 54 (1st Cir. 2000); Serrano-Cruz v. DFI Puerto Rico, Inc., 109 F.3d 23, 25-26 (1st Cir. 1997); Woods v. Friction Materials, Inc., 30 F.3d 255, 260 (1st Cir. 1994).

During this third prong, the "plaintiff must do more that simply refute or cast doubt on the company's rationale", Medina-Muñoz, 896 F.2d at 9, but must show an impermissible discriminatory animus. LeBlanc, 6 F.3d at 842; Vega v. Kodak Caribbean, Ltd., 3 F.2d 476, 479 (1st Cir. 1993).

Defendant's "burden is one of production, not persuasion" Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) and "[a]t all times, the plaintiff bears the 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" Gu v. Boston Police Dept., 312 F.3d at 11 (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. at 253). *See also*, Reeves, 530 U.S. at 143; Rodriguez-Torres, 399 F.3d at 58.

In making this determination the court may "not sit as a super-personnel department that reexamines an entity's business decisions.

No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers [Title VII] does not interfere." Gonzalez v. El Dia, Inc., 304 at 69 (citation and internal quotation marks omitted). Title VII "does not ensure against inaccuracy by an employer, only against... discrimination." Rivas Rosado v. Radio Shack, Inc., 312 F.3d 532, 535. Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 22, 20 (1st Cir. 1999) (courts may not act as super personnel departments reviewing the "merits", "rationality" or accuracy of the defendant's determinations).

The fact that the reasons proffered by the employer are discredited by plaintiff does not automatically mandate a finding of discrimination. "That is because the ultimate question is not whether the explanation was false, but whether discrimination was the **cause** of the [conduct at issue]. We have adhered to a case by case weighing. Nonetheless, disbelief of the reason may, along with the prima facie case, on appropriate facts, permit the trier of fact to conclude the employer had discriminated." Zapata, 277 F.3d at 45 (citations omitted)(emphasis ours); Reeves, 530 U.S. at 147-48.

In a summary judgment context the court must determine "whether plaintiff has produced sufficient evidence that he was discriminated against due to [her sex] to raise a genuine issue of material fact." Zapata, 277 F.3d at 45.

**CIVIL NO. 03-1872 (RLA)**                                          **Page 12**

Thus, in Title VII cases summary judgment petitions will be denied if once the court has reviewed the evidence submitted by the parties in the light most favorable to the plaintiff it finds there is sufficient evidence from which a trier of fact could conclude that the reasons adduced for the charged conduct are pretextual and that the true motive was discriminatory. <u>Santiago-Ramos</u>, 217 F.3d at 57; <u>Rodriguez-Cuervos</u>, 181 F.3d at 20.

### Defendants' Arguments

Defendants allege that plaintiff failed at the prima facie stage in that she was replaced by a woman[2] and her job performance was inadequate in that she failed to comply with the duties of her position and that her attitude toward her supervisor became "intolerable".

In the alternative, defendants argue they had valid non-discriminatory reasons for plaintiff's termination. They initially cite plaintiff's purported lack of knowledge regarding commercial insurance policies. DAEWOO contends that as part of her duties plaintiff was responsible for renewing the commercial insurance policies which included learning about insurance and asking questions

---

[2] Plaintiff's substitution by another female is of no moment for purposes of her discrimination claim. It has been held that "[t]he fact that one person in the protected class has lost out to another person in the protected class is... irrelevant, so long as [she] has lost out *because of [gender]*." <u>O'Connor v. Consolidated Coin Caterers Corp.</u>, 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (italics in original).

CIVIL NO. 03-1872 (RLA)                                                    **Page 13**

and not merely relying on the broker's submissions but that plaintiff refused to do so.

They also claim that plaintiff's survey was carried out without her supervisor's knowledge or approval "in violation of her duties to maintain a healthy work environment" and without following objective criteria.[3] Specifically, they argue that during the March 2002 Women's Week luncheon MR. KANG "who had perceived the sense of insecurity and low morale of the employees expressed his concerns and discussed said issue with the employees. Upon her return from lunch plaintiff, in violation of her duties to maintain a healthy work environment decided, without the approval or prior notification to her supervisor, to conduct an alleged employee survey."[4]

Defendants also attack the methodology and results of the survey reported via a memorandum dated March 15, 2001. They charge plaintiff with discrimination by segregating employees by "Koreans" and "Others" and not adequately classifying the results according to objective criteria.[5]

Further, defendants point to plaintiff's lack of respect toward MR. KANG which defendants summarize as "negative, disorderly and

---

[3] Defendants' Motion for Summary Judgment (docket No. 19) p. 13-14.

[4] *Id.*

[5] *Id.* at 4.

improper conduct" as grounds for termination.[6] Defendants contend that plaintiff "lacked the necessary skills to complied [sic] with the duties of her position and had initiated a crusade of unfounded and unjustified attacks toward her supervisor to the point he was unable to meet with her alone because of her constant disrespect and insubordination... plaintiff's negative, disorderly and improper conduct would continue leaving Mr. Kang no other alternative but to terminate her employment effective September 30, 2002."[7]

DAEWOO denies evidence of discrimination by pointing out that plaintiff was the first woman to hold a managerial position, that MR. KANG, her supervisor, was responsible for hiring her and giving her additional responsibilities on insurance matters which constituted a significant percentage of the Company's annual budget.  They also note that MR. KANG treated all the other employees in the same manner, i.e., that he yelled and harassed men too. Additionally, they argue that MR. KANG's comments that plaintiff was a "strong woman", a "cry woman" or that she was "perfect because [she] had a response for everything" and that she "was always 100% right" are not gender based.

### Plaintiff's Version

As usual in this type of litigation, plaintiff's version clashes with defendants' perspective of the events.

---

[6] Defendants' Motion for Summary Judgment (docket No. 19) p. 15.

[7] *Id.*

CIVIL NO. 03-1872 (RLA)                                    Page 15

Plaintiff's chronicle of the commercial insurance issue is completely at odds with defendants' posture. First, plaintiff noted that none of the positions she held at DAEWOO required either handling insurance matters nor experience in commercial insurance nor did she have any. According to plaintiff her role was to act as liaison between MR. KANG and the insurance broker.

Additionally, plaintiff related that in November 2001 after the broker had submitted the pertinent insurance premium quotes MR. KANG asked her to explain why these had not been lowered. Plaintiff responded that she could not provide the reasons but that she would contact the broker if he so desired. According to plaintiff, at this point MR. KANG started "yelling and screaming" at her asking "in a mocking tone if [she] was the broker's 'messenger'" and telling her to learn insurance.[8] Plaintiff then confronted MR. KANG with the fact that she did not have any insurance training at which time MR. KANG "yelled back at [her] saying that he never had an employee talk back to him." Plaintiff then asked whether she should "bow [her] head and be quiet" if he was disrespectful and his response was yes.[9] At this point plaintiff started crying and MR. KANG told her he did not need a "crying woman."[10]

---

[8]   Plaintiff's Statement ¶ 12.

[9]   *Id.*

[10]   *Id.*

Plaintiff challenges MR. KANG's alleged ignorance of her plan to conduct the survey. In her deposition BETHZAIDA ALAMO indicated that a few days prior the start of the survey she  mentioned to MR. KANG plaintiff's plans to hold meetings with the employees and that MR. KANG denied having given plaintiff his authorization. However, according to plaintiff MR. KANG never raised this matter with her prior to the survey.

In her Statement plaintiff explained how the idea of a survey originated and the manner in which it was conducted. According to plaintiff, during the Women's Week luncheon MR. KANG mentioned the "low morale among the company's employees."[11] After lunch NICKY VIDAL called plaintiff into his office and indicated that MR. KANG had mentioned the "low morale" situation to him.[12]

Plaintiff further stated that:

As the Human Resources Manager I understood that it was my duty to investigate the reasons for the problem affecting the company's employees. **Nicky Vidal suggested then to ask the employees and find out how they felt.** Mr. Vidal and I then met with the employees and interviewed them. According to the interviews, the main complaint of Daewoo's employees was the disrespectful treatment that they received from part of the Korean executives, mainly from Mr. Kang. I

---

[11]  Plaintiff's Statement ¶ 13.

[12]  *Id.*

proceeded to prepare a memorandum summarizing the
complaints from the employees and handed it to Mr. Kang.
The contents of the report were completely confidential and
I did not disclose it to anyone besides Mr. Kang.

Plaintiff's Statement ¶13 (emphasis in original).

Plaintiff indicated that after MR. KANG received the survey he met with both NICKY VIDAL and her and "yelled and accused me of doing the survey without his authorization. Mr. Kang also accused us of making up the information contained in the survey. I was admonished in writing. Nevertheless, Mr. Vidal who also participated in the survey and suggested that the employees be interviewed was not admonished."[13]

According to plaintiff her relationship with MR. KANG was "very good and cordial" until he was appointed Company President in May 2001 at which time "his attitude towards the employees in the company changed. He became belligerent and disrespectful, yelling and shouting at the employees."[14]

Plaintiff explained that at the beginning she "tolerated his shouting and insults [but that his] abrasiveness towards [her] increased to the point [that] she was left with no other alternative than to confront him."[15]

---

[13]   Plaintiff's Statement ¶ 14

[14]   *Id*. at ¶ 10.

[15]   Plaintiff's Statement ¶ 11.

CIVIL NO. 03-1872 (RLA)                                            **Page 18**

Specifically, plaintiff noted:

The yelling and screaming by Mr. Kang became a practice in the company. I witnessed shouting matches between Mr. Kang and Mr. Vidal. It is important to point out that when Mr. Vidal shouted back at Mr. Kang, the latter acted naturally as it was a way of doing business. Mr. Vidal was never admonished or reprimanded when he confronted Mr. Kang. Additionally, other male managers in the company confronted Mr. Kang without any consequence.

Plaintiff's Statement ¶ 14.

There is ample evidence to support plaintiff's position that shouting and screaming marked MR. KANG's management style but more importantly, that the other employees were allowed to shout and scream back at him without any consequence.

In his deposition MR. KANG also acknowledged the fact that he screamed and shouted at his employees including plaintiff and that NICKY VIDAL would also scream and shout back at him. He further acknowledged that he would not discipline NICKY VIDAL when he shouted back at him. NICKY VIDAL also confirmed the fact that MR. KANG would shout at everybody and that he would shout back.

Plaintiff submitted the Statement under Penalty subscribed by JOSE SOLTERO who worked with DAEWOO for a total of seven years, the last three as Director, Service and Logistic and who attested to the fact that "Mr. Kang used to shout, scream and insult the employees in

the company. The shouting and screaming from Mr. Kang was so frequent that it became a daily behavior from him in the company."[16] Additionally, MR. SOLTERO unequivocally acknowledged that "when Mr. Kang shouted at me and I shouted back at him he acted naturally without any consequence or reprimand from his part."[17]

Plaintiff specifically named three directors who confronted MR. KANG "rasing their voice" but "were never admonished or reprimanded." However, when plaintiff "raised [her] voice in response to Mr. Kang's disrespectful treatment, [she] was reprimanded and labelled (sic) a 'strong woman'. [Plaintiff] never heard Mr. Kang calling any of the male supervisors 'strong man' after they confronted him."[18]

Based on the foregoing we find that plaintiff has amply met her burden under applicable summary judgment standard of undermining the material facts as proffered by defendants. There is sufficient credible evidence for the trier of fact to conclude that MR. KANG's characterization of plaintiff's behavior in response to his idiosyncratic management style as "negative, disorderly and improper conduct"[19] was based on his biased notion of how women should comport

---

[16] SOLTERO's Statement ¶ 4.

[17] *Id.* ¶ 5.

[18] Plaintiff's Statement ¶ 15.

[19] Defendants' Motion for Summary Judgment (docket No. 19) p. 15.

CIVIL NO. 03-1872 (RLA)                                          **Page 20**

in an office setting. This is further confirmed by MR. KANG's comments referring to plaintiff as a "strong woman".

Gender discrimination has been found to exist when employment decisions are influenced by sex stereotyping. "As for the legal relevance of sex stereotyping, we are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group". <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 251, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Employers may not require their female employees to behave in a particular manner traditionally associated with the attributes of their sex such as being submissive. *See i.e.*, *id*. (Denial of partnership promotion to an admittedly competent and professional woman because she was perceived as abrasive and masculine); <u>Lipsett v. University of Puerto Rico</u>, 864 F.2d 881, 908 (1st Cir. 1988) (defendants liable for sexual harassment of female medical resident because she was assertive and did not follow example of other female resident "who always obeyed [male residents] and prepared food for them.")

Plaintiff has met her burden of not only establishing her prima facie case but also presenting sufficient evidence to conclude that the proffered reasons for her termination were pretextual. She specifically challenged defendants' allegations of her deficient job performance a well as each of the reasons advanced by defendants as purportedly proper grounds for termination.

CIVIL NO. 03-1872 (RLA)                                    **Page 21**

---

## RETALIATION

Defendants further requested dismissal of plaintiff's retaliation claims which plaintiffs have failed to oppose.

Title VII proscribes retaliation by an employer based on an employee's complaint of discriminatory practices. 42 U.S.C. § 2000e(3)(a). The <u>McDonnell Douglas</u> burden-shifting analysis is also utilized for discriminatory retaliation claims. A prima facie retaliation showing requires that plaintiff present evidence that: (1) she engaged in Title VII protected conduct; (2) experienced an adverse employment action; and (3) there is a causal connection between the protected conduct and the ensuing adverse action. <u>Noviello</u>, 398 F.3d at 88; <u>Che</u>, 342 F.3d at 38; <u>Dressler v. Daniel</u>, 315 F.3d at 78; <u>Gu v. Boston Police Dep't</u>, 312 F.3d 6, 14 (1st Cir. 2002); <u>Marrero v. Goya</u>, 304 F.3d at 22.

Similarly, Law 69 outlaws termination of employment for filing a discrimination complaint or otherwise opposing discriminatory practices. 29 P.R. Laws Ann. § 1340 (2002).

Plaintiff's sole ground in support of her retaliation claim is a September 24, 2002 memorandum addressed to MR. KANG which prompted her termination. In the memorandum plaintiff voices her complaint regarding the prevailing negative work environment and harassment purportedly generated by MR. KANG. However, at no point is plaintiff's dissatisfaction predicated on gender bias. As a matter of

**CIVIL NO. 03-1872 (RLA)**                                          **Page 22**

fact, the memorandum makes reference to how the other Company employees were also being affected by MR. KANG's behavior.

Based on these facts we cannot conclude that plaintiff's termination resulted from having engaged in conduct protected under Title VII or under the Puerto Rico sex discrimination statutes.

### CONCLUSION

Based on the foregoing defendants' Motion for Summary Judgment (docket No. **19**)[20] is disposed of as follows:

The request to dismiss the discrimination claims is **DENIED.**

The request to dismiss the retaliation claims is **GRANTED.** Judgment shall be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 18th day of November, 2005.


                                        S/Raymond L. Acosta
                                         RAYMOND L. ACOSTA
                                     United States District Judge

---

[20] *See*, Plaintiff's Opposition (docket No. **27**).